[No. D044268. Fourth Dist., Div. One. Mar. 3, 2005.]

GEORGE SCHUSTER, Plaintiff and Appellant, v.
STEPHEN P. GARDNER et al., Defendants and Respondents.

306

COUNSEL

Green & Jigarjian, Robert S. Green, John W. Pillette; Murray, Frank & Sailer and Brian P. Murray for Plaintiff and Appellant.

Quinn Emanuel Urquhart Oliver & Hedges, John B. Quinn, Harry A. Olivar; Richards Layton & Finger and Allen M. Terrell, Jr., for Defendant and Respondent John J. Moores.

Duckor Spradling & Metzger and Michael Duckor for Defendant and Respondent Rod Dammeyer.

Bewley, Lassleben & Miller and Leighton Anderson for Defendant and Respondent Christopher A. Cole.

Bergeson and Caroline McIntyre for Defendant and Respondent Stephen P. Gardner.

Goodin, MacBride, Squeri, Ritchie & Day, Wayne Lamprey and Anne H. Hartman for Defendant and Respondent Thomas G. Watrous.

Hahn & Adema, Jane Hahn, Alison P. Adema; Testa, Hurwitz & Thibeault, Brian E. Pastuszenski and Meghan M. Hart for Defendant and Respondent Charles E. Noell III.

Allen Matkins Leck Gamble & Mallory, George J. Berger, Kathryn D. Horning; McNaul Ebel Nawrot & Helgren and Robert D. Stewart for Defendant and Respondent William D. Savoy.

**OPINION**

**McCONNELL, P. J.**—This action for breach of fiduciary duty is one of numerous shareholder actions arising from alleged management improprieties of officers and directors of Peregrine System, Inc. (Peregrine), and the attendant decline in its stock value. Plaintiff George Schuster appeals a judgment of dismissal entered after the court sustained without leave to amend the demurrers of defendants Stephen P. Gardner, Christopher A. Cole, Rod Dammeyer, John J. Moores, Charles E. Noell, III, William D. Savoy and Thomas G. Watrous, on the ground this is a derivative action Schuster lacks standing to pursue. Schuster contends the trial court erred by finding the action is governed by Delaware law. He asserts that under California law, this is a direct action rather than a derivative action, and in any event, the same is true under Delaware law. We conclude this is a derivative action under both Delaware and California law, and accordingly, affirm the judgment without reaching the choice of law issue.

### FACTUAL AND PROCEDURAL BACKGROUND

Because we are reviewing rulings made at the pleading stage, we take the factual background from allegations of the complaint, assuming their truth. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601].)

Peregrine went public in 1997. The company "provided software and services designed to reduce costs of doing business, [and] offer[ed] products and services to address infrastructure resource management, e-commerce technologies, and services and employee relationship management."

In April 2002 Peregrine, after replacing its outside auditor, announced it would delay the release of its fourth quarter and year-end financial results. Following the announcement, its share price dropped more than 49 percent to

$3.45. The following month, Peregrine announced it planned to investigate "potential accounting improprieties" identified by its new outside auditor, and "revenue restatements could amount to as much as $100 million." Peregrine also announced the resignation of defendant Gardner, chief executive officer and chairman of the board of directors. Following the announcement, Peregrine's shares fell 61 percent to $1.01.

Numerous federal and state lawsuits ensued, and derivative actions were automatically stayed when Peregrine filed for bankruptcy protection. In October 2002 Schuster commenced this putative class action on behalf of all current and former Peregrine stockholders for defendants' alleged breach of fiduciary duties and aiding and abetting the breach of fiduciary duties. The defendants removed the case to federal court on the ground the claims were preempted by the Securities Litigation Uniform Standards Act of 1998 (SLUSA) (15 U.S.C. § 78bb(f)). Schuster then amended the complaint to avoid SLUSA, by modifying the putative class to eliminate anyone who purchased or sold Peregrine stock during the class period, July 19, 2000 to May 6, 2002. Finding SLUSA no longer applicable, the federal court granted Schuster's motion to remand the matter to state court.

The first amended complaint also stated: "Defendants are alleged to have breached and/or abetted breaches of fiduciary duties of good faith and loyalty, including the duty of disclosure owed to Peregrine shareholders. In an effort to benefit themselves, certain [d]efendants (aided and abetted by others) caused Peregrine to embark on an ill-conceived acquisition spree, overstate assets, improperly recognize an estimated $250 million of revenue, overstate equity and understate expenses, while soliciting Peregrine shareholders' votes concerning board elections, auditor ratification and amendments to the [c]ompany's articles of incorporation." The complaint also alleged defendants sold large amounts of stock while deceiving putative class members into holding their shares. Schuster sought damages, attorney fees and costs.

Defendants demurred to the amended complaint on the ground the alleged claims are derivative in nature, as opposed to direct, and thus Schuster lacks standing to pursue them. Defendants asserted the claims "are common to all shareholders and . . . are the property of Peregrine's bankruptcy estate," and "[n]otably absent is Peregrine, the nominal defendant in [a] derivative action."

At the hearing, the parties and the court agreed Delaware law is applicable; Peregrine is a Delaware corporation. Applying that state's law, the court sustained the demurrers with leave to amend.

Schuster filed a second amended complaint, which contained one cause of action for breach of fiduciary duty. This complaint included the new allegation that Peregrine's "articles of incorporation were amended to increase the number of outstanding shares by 150%, diluting the ownership interest of plaintiff and the [c]lass members while defendants and other persons who participated [in] Peregrine's stock option or restricted share awards plans received proportionate increases to their positions at this time."

Defendants again demurred on the ground the claims were derivative and thus Schuster lacks standing to pursue them. In opposition, Schuster argued California law is applicable, and the second amended complaint sufficiently alleged direct claims under both California and Delaware law. In reply, defendants argued Delaware law controls, but in any event the claims are derivative under California law as well as Delaware law.

The court issued a tentative ruling sustaining the demurrers without leave to amend. The court determined that Delaware law applies, and under Delaware law Schuster's action is a derivative action that belongs to Peregrine's bankruptcy estate. After a hearing, the court confirmed its tentative ruling. A judgment of dismissal was entered on February 23, 2004.

## DISCUSSION

### I

In reviewing the propriety of the sustaining of a demurrer, the "court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] . . . The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We review the court's ruling de novo. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].)

### II

### A

Shareholders may bring two types of actions, "a *direct* action filed by the shareholder individually (or on behalf of a *class* of shareholders to which

he or she belongs) for injury to his or her interest *as a shareholder*," or a "*derivative* action filed on *behalf of the corporation* for *injury to the corporation* for which it has failed or refused to sue." (Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2004) ¶ 6:598, p. 6-127.) "The two actions are mutually exclusive: i.e., the right of action and recovery belongs either to the *shareholders* (direct action) or to the *corporation* (derivative action)." (*Ibid.*) When the claim is derivative, the "shareholder is merely a nominal plaintiff . . . . Even though the corporation is joined as a nominal defendant . . . , it is the real party in interest to which any recovery usually belongs." (Friedman, *supra,* ¶ 6:602, pp. 6-128.1 to 6-128.2.)

Schuster does not contest that any derivative claims are the property of Peregrine's bankruptcy estate. (See 11 U.S.C. § 541.) He objects to the application of Delaware law to resolve the issue of whether the second amended complaint is a derivative action or a direct action of the putative class members. He contends that under California law, it is a direct action. Defendants counter that the trial court correctly applied Delaware law, but any error is immaterial as under both states' laws it is a derivative action.

■ When presented with a choice of law question, we first determine whether the laws of the two concerned states actually differ on the issue under consideration. (*Havlicek v. Coast-to-Coast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844, 1851 [46 Cal.Rptr.2d 696].) We conclude that under either California or Delaware law, Schuster's second amended complaint is a derivative action. Accordingly, regardless of its reasoning the court properly sustained the demurrer for lack of standing. ■ "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record." (*Blue Chip Enterprises, Inc. v. Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712 [139 Cal.Rptr. 651].)

## B

■ Under California law, "a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth). The corporation itself must bring such an action, or a derivative suit may be brought on the corporation's behalf." (Friedman, Cal. Practice Guide: Corporations, *supra,* ¶ 6:601.1, p. 6-128.1, citing *Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 529–530 [170 P.2d 898], *O'Hare v. Marine Electric Co.* (1964) 229 Cal.App.2d 33, 36–37 [39 Cal.Rptr. 799].) A different rule would "authorize multitudinous litigation and ignore the corporate entity." (*Sutter v. General Petroleum Corp., supra,* at p. 530.)

An action is derivative if " 'the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' " (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106 [81 Cal.Rptr. 592, 460 P.2d 464].) Shareholders may bring a derivative suit to, for example, enjoin or recover damages for breaches of fiduciary duty directors and officers owe the corporation. (Friedman, Cal. Practice Guide: Corporations, *supra,* ¶ 6:604, p. 6-128.2.) An individual cause of action exists only if damages to the shareholders were not *incidental* to damages to the corporation. (*Jones v. H. F. Ahmanson & Co., supra,* at p. 107.) Examples of direct shareholder actions include suits brought to compel the declaration of a dividend, or the payment of lawfully declared or mandatory dividends, or to enjoin a threatened ultra vires act or enforce shareholder voting rights. (Friedman, *supra,* ¶ 6:601, p. 6-128.)

In *Avikian v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108 [120 Cal.Rptr.2d 243], the plaintiff shareholders alleged the defendant officers and directors mismanaged or looted corporate assets and entered into self-serving deals to sell assets to third parties, culminating in the corporation's involuntary liquidation. (*Id.* at pp. 1111, 1112, 1115.) The court held the claims were derivative in nature, and thus the lower court properly dismissed the complaint. The court explained the plaintiffs' "own damages, the loss in value of their investments in [the corporation], were merely incidental to the alleged harm inflicted upon [the corporation] *and all its shareholders.*" (*Id.* at p. 1116.)

Here, the gravamen of the second amended complaint was harm to Peregrine. It alleged that in "an effort to benefit themselves, certain [d]efendants: (a) solicited stockholder approval to increase the number of authorized shares of common stock from 200 million to 500 million shares, enabling Peregrine to issue shares in payment for an ill-conceived acquisition spree by issuing stock to pay for those acquisitions and diluting the interests of [p]laintiff and the [c]lass; (b) overstated assets and equity; (c) improperly recognized at least $509 million of revenue; and (d) understated expenses. In addition, [d]efendants solicited approval concerning board elections and the board's selection of outside auditor without first making corrective disclosures to Peregrine's financial filings with the Securities and Exchange Commission." The complaint also alleged the putative class members were damaged "by owning shares of stock now subject to the 'fraud penalty,' pursuant to which shares of stock are undervalued because the [c]ompany has lost credibility and the market no longer believes a [c]ompany's . . . reported numbers," and this so-called " 'fraud penalty' ma[de] it difficult to borrow money or receive financing, a condition which contributed [to] Peregrine

filing for bankruptcy." The damage to Schuster and the putative class members, diminution in stock value, was incidental to the injury to Peregrine.

Schuster contends the second amended complaint is a direct action because to avoid removal to federal court he chose to limit the putative class to persons who held Peregrine stock between July 19, 2000, and May 6, 2002. Without citation to the record, he asserts that Peregrine "issued 45 million shares of stock during the [c]lass [p]eriod, [and thus] no more than 40 percent of Peregrine's shareholders could be members of the [c]lass." He cites the language of *Jones v. H. F. Ahmanson & Co., supra,* 1 Cal.3d at pages 106–107, that an action is derivative if "the gravamen of the complaint is injury to the corporation, *or to the whole body of its stock,*" and submits this action is direct because it does not concern "the whole body" of Peregrine's stock.

The argument is specious. As defendants point out, whether Schuster "seeks to recover on behalf of all the stockholders, or tries to pursue claims on behalf of some subset, the damages sought are still incidental to the alleged injury to Peregrine, and any recovery should go to the company."

Schuster also contends California law recognizes direct "holder actions" for breach of fiduciary duties to shareholders. He relies on *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167 [132 Cal.Rptr.2d 490, 65 P.3d 1255] (*Small*), but it is unavailing. In *Small,* a stockholder sued the corporation and its officers for fraud, alleging they sent stockholders a fraudulent quarterly financial report that grossly over reported earnings and profit, and when the fraud was discovered, the stock price plunged, causing injury to stockholders like himself. (*Id.* at p. 170.) The issue presented was "whether California should recognize a cause of action by persons wrongfully induced to *hold* stock instead of selling it." (*Id.* at p. 171.) The court referred to "such a lawsuit as a 'holder's action' to distinguish it from suits claiming damages from the purchase or sale of stock." (*Ibid.*)

The court held: ". . . California law should allow a holder's action for fraud or negligent misrepresentation. California has long acknowledged that if the effect of a misrepresentation is to induce forbearance—to induce persons not to take action—and those persons are damaged as a result, they have a cause of action for fraud or negligent misrepresentation. We are not persuaded to create an exception to this rule when the forbearance is to refrain from selling stock. This conclusion does not expand the tort of common law fraud, but simply applies long-established legal principles to the factual setting of misrepresentations that induce stockholders to hold on to their stock." (*Small, supra,* 30 Cal.4th at p. 171.)

The court, however, expressly limited such an action to "stockholders who can make a bona fide showing of actual reliance upon the misrepresentations." (*Small, supra,* 30 Cal.4th at pp. 171, 184–185.) The plaintiff must allege with specificity "actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations. [¶] Plaintiffs who cannot plead with sufficient specificity to show a bona fide claim of actual reliance do not stand out from the mass of stockholders who rely on the market . . . . [S]uch persons cannot bring individual or class actions for fraud or misrepresentation. They may, however, be able to bring a corporate derivative action against the corporate officers and directors for harm done to the corporation. [Citation.] Because a plaintiff in a derivative action is suing on behalf of the corporation, he or she need not show personal reliance." (*Id.* at pp. 184–185.)

In *Small,* the plaintiff's complaint alleged no injury to the corporation or wrong common to the entire body of stockholders; rather, it alleged injury only to those stockholders who actually relied on the defendants' alleged misrepresentations. The court held the plaintiff did not adequately plead reliance, and thus it affirmed the sustaining of a demurrer. The court concluded that because it stated a new rule of law, the plaintiff should be given leave to amend his complaint. (*Small, supra,* 30 Cal.4th at p. 185.)

Schuster asserts the "same arguments that compelled the Supreme Court to hold that there is a direct action for a class of holders for fraud claims also apply to a direct action for holders for breach of fiduciary duty." We are not, however, required to reach the issue. Schuster points to no allegation regarding actual reliance. "The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. It is entitled to the assistance of counsel." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 594, p. 627.) We have nonetheless combed through the lengthy complaint and find no allegation that the alleged "massive fraud" of defendants actually induced Schuster or the putative class members to hold on to their stock. Further, Schuster does not contend he could amend the complaint to allege actual reliance. Rather, he ignores the reliance issue altogether.

Under California law, the second amended complaint is a derivative action that Schuster lacks standing to pursue.

## C

Schuster fares no better under Delaware law. In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.* (Del. 2004) 845 A.2d 1031 (*Tooley*), the Delaware Supreme Court discarded the "special injury" test courts occasionally applied—whether the plaintiff shareholder had suffered an injury different from

that suffered by shareholders generally—in determining whether an action was direct or derivative. The court found "it is necessary that a standard to distinguish such actions be clear, simple and consistently articulated and applied by our courts." (*Id.* at p. 1036.)

■ The court held the "issue must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" (*Tooley, supra,* 845 A.2d at p. 1033.) The court elaborated that to be a direct action, the "stockholder's claimed direct injury must be *independent of any alleged injury to the corporation.* The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail *without showing any injury to the corporation.*" (*Id.* at p. 1039, italics added.)

■ In *In re Syncor Intern. Shareholders Lit.* (Del. Ch. 2004) 857 A.2d 994, the court reasoned that "under *Tooley,* the duty of the court is to look at the nature of the wrong alleged, not merely at the form of the words used in the complaint. As this court recently said, '[e]ven after *Tooley,* a claim is not "direct" simply because it is pleaded that way . . . . Instead the court must look to all the facts of the complaint and determine for itself whether a direct claim exists.' " (*Id.* at p. 997, citing *Dieterich v. Harrer* (Del. Ch. 2004) 857 A.2d 1017, 1027.)

Schuster contends this is a direct action under *Tooley* because the second amended complaint alleged no harm to Peregrine, only harm to the shareholders included in the putative class. As discussed in the previous section, though, the alleged harms were to the corporation, and the harm to the shareholders, dilution in stock value, was incidental thereto and common to all shareholders. The complaint alleged defendants mismanaged the company by doing such things as causing it to issue newly authorized shares "in payment for an ill-conceived acquisition spree," overstating assets and equity and understating expenses, and making it "difficult [for Peregrine] to borrow money or receive financing, a condition which contributed [to] [it] filing for bankruptcy."

■ It is well settled in Delaware that a "claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong *to the corporation* that is indirectly experienced by all shareholders. Any devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder. Thus, the wrong alleged is entirely derivative in nature." (*Kramer v. Western Pacific Industries, Inc.* (Del. 1988) 546 A.2d 348, 353; see also *Winston v. Mandor* (Del. Ch. 1997) 710 A.2d 835, 845 [overpayment for assets is waste

of corporate assets and "classic derivative claim"].) In *Tooley*, the court reaffirmed its holding in *Kramer*. (*Tooley, supra,* 845 A.2d at p. 1038.)

Schuster relies on *Anglo American Security Fund, L.P. v. S.R. Globe International Fund, L.P.* (Del. Ch. 2003) 829 A.2d 143 (*Anglo American*), to show this is a direct action. *Anglo American,* however, is unhelpful because it was an action against general partners in a limited partnership. The court there recognized the "test for distinguishing direct from derivative claims in the context of a limited partnership is substantially the same as that used when the underlying entity is a corporation." (*Anglo American, supra,* 829 A.2d at p. 149, fn. omitted.) The court explained, however, that "in some instances, the relationships among the parties and the function and structure of the partnership itself may diverge from the corporate model so dramatically that some claims, which in a corporate context might be classified as derivative, *must* be brought as direct claims . . . to enable the injured parties to recover while preventing a windfall to individuals or entities whose interests were not injured." (*Id.* at p. 151.)

The court determined that although a claim for diminution in value of a limited partnership would ordinarily be derivative in nature, the "operation and function of the [partnership] as specified in the [partnership] [a]greement diverge so radically from the traditional corporate model that the claims made in the complaint must be brought as direct claims." (*Anglo American, supra,* 829 A.2d at p. 152.) *Anglo American* is inapplicable to this action against corporate officers and directors.

Additionally, Schuster cites *Malone v. Brincat* (Del. 1998) 722 A.2d 5, for the proposition that when directors breach their fiduciary duties by disseminating false information, shareholders may choose whether to bring a derivative or direct action. Schuster relies on the following language: "Delaware law . . . protects shareholders who receive false communications from directors even in the absence of a request for shareholder action. When the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty. That violation may result in a derivative claim on behalf of the corporation or a cause of action for damages. There may also be a basis for equitable relief to remedy the violation." (*Id.* at p. 14, fn. omitted.) The language does not suggest that when a cause of action is derivative in nature under the test of *Tooley* and its predecessors, a shareholder may opt to bring a direct action. Rather, it indicates a violation of fiduciary duty may give rise to a derivative or direct claim, depending on the circumstances. Indeed, the court noted the matter would "require an articulation of the classic 'direct v. derivative' theory." (*Id.* at p. 14, fn. 45.)

■ Under *Tooley*, this is a derivative suit. Peregrine suffered the alleged harm, and it should receive the benefit of any recovery, rather than individual stockholders. (*Tooley, supra,* 845 A.2d at p. 1033.) Because Schuster lacks standing to pursue this action under both California and Delaware law, we are not required to resolve the choice of law issue.[1]

## DISPOSITION

The judgment is affirmed. Defendants are entitled to costs on appeal.

Haller, J., and O'Rourke, J., concurred.

---

[1] In his reply brief, Schuster contends this is a direct action because "the violation of his voting rights constituted a direct claim for which damages are recoverable." An appellant, however, abandons an issue by failing to raise it in his or her opening brief. (*California Recreation Industries v. Kierstead* (1988) 199 Cal.App.3d 203, 205, fn. 1 [244 Cal.Rptr. 632].)